AO 106 (Rev. 04/10) Application for a Search Warrant

AUSAs Kim/Martinez

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

1934 Grand Rue Circle, Columbus, Ohio 43229

Case No. 2:23-mj-15

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of a controlled substance |
| 21 U.S.C. 846 | Conspiracy to distribute and possess w/intent to distribute a controlled substance |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Christopher Cadogan
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 10, 2023

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF:

1934 Grande Rue Circle
Columbus, Ohio 43229

Case No. 2:23-mj-15

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Christopher Cadogan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 1934 Grande Rue Circle in Columbus, Ohio 43229, hereinafter referred to as TARGET LOCATION #1, further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed for approximately twenty-six years. I am currently assigned to Group 4 of the DEA's Columbus, Ohio District Office. This group is currently comprised of narcotics investigators from the DEA and the Columbus Division of Police (CPD). Group 4 was designed, in part, to target individuals and groups involved in the manufacture and distribution of methamphetamine, cocaine, heroin, and fentanyl in Franklin County, Ohio. Prior to being employed by the DEA, I was employed for approximately two and one-half years as a United

States Border Patrol Agent. As a Border Patrol Agent, I was cross-designated to make federal arrests of individuals in violation of Title 21 of the United States Code. For more than twenty-eight years, I have had the authority to make federal drug arrests.

3. As a DEA Special Agent, Your Affiant has participated in hundreds of narcotics investigations involving various types of controlled substances. I have received substantive advanced training pertaining to the investigation of various crimes which arise from narcotics trafficking, including money laundering, the use of interstate transportation in the furtherance of narcotics trafficking, the use of the United States Postal Service facilities in furtherance of narcotics trafficking, and the use of telecommunications facilities in the furtherance of narcotics trafficking. I have participated in investigations involving the purchase of controlled substances from suspected narcotics traffickers using both undercover narcotics investigators and confidential sources. I have participated in the drafting and execution of search warrants for narcotics, proceeds from the sale of narcotics, documentary evidence of narcotics trafficking, and for the telecommunications devices used by narcotics traffickers. I have conducted surveillance in connection with narcotics investigations. I have authored five affidavits supporting federal wire and electronic intercepts of known and suspected narcotics traffickers.

4. Through the course of these investigations, I have personally interviewed confidential sources and other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of

narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 (distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances) have been committed by Eric Dewayne TURNER, Sr. and Eric Dewayne TURNER, Jr. There is also probable cause to search the location described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

7. On September 12, 2022, Your Affiant and a DEA Task Force Officer (TFO) debriefed a DEA confidential source, hereafter referred to as the CS, concerning purported narcotics distributor Eric Dewayne TURNER, Sr. According to the CS, TURNER, Sr.

3

distributed multi-kilogram quantities of methamphetamine, cocaine, and fentanyl from a series of trap houses located in Columbus, Ohio. According to the CS, TURNER, Sr. had a trap house at 1488 East 22nd Avenue in Columbus, Ohio 43211. According to the CS, TURNER, Sr. also had an apartment located inside The Reserve at Sharon Woods Apartments where TURNER, Sr. distributed illicit narcotics. Since this debriefing, the information provided by the CS to law enforcement concerning TURNER, Sr. has been corroborated through independent investigation. The CS is considered reliable.

8. The CS also advised the investigators that he/she was willing to introduce an undercover DEA agent to TURNER, Sr. for the purpose of purchasing multi-ounce quantities of methamphetamine.

9. On September 21, 2022, investigators established surveillance of the suspected trap house operated by TURNER, Sr. at 1488 East 22nd Avenue, Columbus, Ohio. At the time this surveillance was established, an officer observed a black 1999 GMC Sierra 1500, bearing Ohio license plate JDV9556, registered to Shanika Boone at 1958 Dunning Road, Columbus, Ohio 43219, parked on the north side of 22nd Avenue, facing west, in front of the suspected trap house located at 1488 East 22nd Avenue.

10. On October 5, 2022, plans were formulated at the DEA's Columbus District Office to surveil a planned meeting between the CS and TURNER, Sr. at the suspected trap house located on East 22nd Avenue, Columbus, Ohio. The ultimate goal was for the CS to

introduce a DEA Special Agent (UC #1), acting in an undercover capacity, to TURNER, Sr. for the purpose of purchasing four (4) ounces of methamphetamine. According to the CS, TURNER, Sr. had agreed to sell the CS's business associate (UC #1) four (4) ounces of methamphetamine for $800.00.

11. As a result, UC #1 obtained $800.00 in official advanced funds (OAF) with which to purchase the purported methamphetamine. UC #1 was also equipped with a digital recording device and two transmitters that investigators monitored over a police radio and a cellular telephone.

12. On October 5, 2022, at approximately 12:48 p.m., investigators stablished surveillance in the area of 1488 East 22nd Avenue, Columbus, Ohio. At the time this surveillance was established, the black 1999 GMC Sierra 1500, bearing Ohio license plate JDV9556, registered to Shanika Boone at 1958 Dunning Road, Columbus, Ohio 43219, was parked on the north side of East 22nd Avenue, facing west, in front of 1488 East 22nd Avenue, Columbus, Ohio. This vehicle had been observed on September 21, 2022, parked on East 22nd Avenue, in front of 1488 East 22nd Avenue, Columbus, Ohio.

13. UC #1 pulled his/her vehicle into the backyard of 1488 East 22nd Avenue, Columbus, Ohio. UC #1 and the CS got out of the vehicle. At approximately the same time, TURNER, Sr. walked from the residence and joined UC #1 and the CS in the backyard.

14. While in the backyard, TURNER, Sr. pulled approximately 137.4 gross grams of a white crystalline substance, purported to be methamphetamine, which was contained within two clear plastic baggies, from his right front pants pocket and handed it to UC #1. UC #1 then handed the $800.00 in OAF to TURNER, Sr. to complete the transaction. Later, UC #1 positively identified TURNER, Sr. from a BMV photograph of Eric Dewayne TURNER, Sr.

15. The purported methamphetamine that was purchased from TURNER, Sr. was transported to the DEA's Columbus District Office for processing. A presumptive field test of a sample that was taken from the suspected methamphetamine was positive for the presence of methamphetamine. This drug exhibit was subsequently mailed to the DEA's North Central Laboratory in Chicago, Illinois for analysis and safekeeping. DEA forensic chemists analyzed the suspected methamphetamine purchased from TURNER, Sr. and concluded that it consisted of 109.3 grams, with a variance of plus or minus 6.7 grams, of pure methamphetamine hydrochloride. The substance in total was 99% pure methamphetamine hydrochloride, with a variance of plus or minus 6%.

16. On October 20, 2022, plans were formulated at the DEA's Columbus District Office to again surveil a planned meeting between UC #1 and TURNER, Sr. at another suspected trap house located at 1934 Grande Rue Circle, Columbus, Ohio 43229 (TARGET LOCATION #1). This apartment is located inside the Reserve at Sharon Woods Apartments complex. The ultimate goal was for UC #1 to meet with TURNER, Sr. for the purpose of purchasing one

6

(1) pound of methamphetamine from TURNER, Sr. for $2,500.00. According to UC #1, TURNER, Sr. had agreed to sell him/her one (1) pound of methamphetamine for $2,500.00.

17. UC #1 obtained $2,500.00 in OAF with which to purchase the purported methamphetamine. UC #1 was also equipped with a digital recording device and a transmitter that investigators monitored over cellular telephones.

18. At approximately 12:35 p.m., investigators established surveillance of TARGET LOCATION #1. Investigators observed a silver 2014 Infiniti QX80, bearing Ohio temporary license plate P370631, registered to Eric Dewayne TURNER, Jr., parked in front of TARGET LOCATION #1.

19. At approximately 1:08 p.m., TURNER, Sr. texted UC #1 the address to confirm where he wanted to meet UC #1 for the purpose of selling UC #1 a pound of methamphetamine. TURNER, Sr.'s text read, "1934 grande rue circie 43229" (TARGET LOCATION #1).

20. At approximately 1:32 p.m., UC #1 and a DEA TFO acting in an undercover capacity (UC #2) arrived and parked their vehicle within walking distance of TARGET LOCATION #1. UC #1 and UC #2 got out of the vehicle and walked to the front of TARGET LOCATION #1.

21. While standing in front of TARGET LOCATION #1, UC #1 spoke to TURNER, Sr., who was inside the residence, through the open apartment door. TURNER, Sr. handed UC #1 approximately 499 gross grams of a white crystalline substance, purported to be methamphetamine, which was contained within a large zip-lock bag and then further contained within three gray plastic shopping bags, in exchange for the $2,500.00 in OAF. Later, UC #1 positively identified TURNER, Sr. from a BMV photograph of TURNER, Sr. and a more recent social media photograph of TURNER, Sr.

22. The purported methamphetamine that was purchased from TURNER, Sr. was transported to the DEA's Columbus District Office for processing. A presumptive field test of a sample of the purported methamphetamine was positive for the presence of methamphetamine.

23. On November 1, 2022, the Franklin County Municipal Court issued a tracker warrant for the silver Infiniti driven by TURNER, Sr. This warrant was executed on November 10, 2022.

24. Electronic surveillance of the Infiniti indicated that from November 10, 2022 until November 29, 2022, the vehicle continued to spend a good deal of time at both of the trap houses (1488 East 22nd Avenue, Columbus, Ohio and TARGET LOCATION #1) where TURNER, Sr. sold methamphetamine to UC #1.

25. On November 27, 2022, the CS advised Your Affiant that TURNER, Sr. was awaiting a shipment of narcotics. According to the CS, TURNER, Sr. told the CS that this shipment was supposed to arrive on or about November 30, 2022.

26. On December 6, 2022, plans were formulated at the DEA's Columbus District Office to surveil a planned meeting between UC #1, UC #2, the CS, and TURNER, Sr. at TARGET LOCATION #1. The ultimate goal was for UC #1, UC #2, and the CS to meet with TURNER, Sr. for the purpose of purchasing two (2) pounds of methamphetamine from TURNER, Sr. for $5,000.00. According to UC #1, TURNER, Sr. had agreed to sell him/her two (2) pounds of methamphetamine for $5,000.00.

27. UC #1 obtained $5,000.00 in OAF with which to purchase the purported methamphetamine. UC #1 was also equipped with a digital recording device and a transmitter that investigators monitored over cellular telephones.

28. On December 6, 2022, at approximately 1:15 p.m., investigators established surveillance of TARGET LOCATION #1.

29. At approximately 1:58 p.m., UC #1, UC #2, and the CS arrived and parked within walking distance of TARGET LOCATION #1. The CS got out of the vehicle and walked towards apartment 1934. The CS knocked on the door to apartment 1934 and then returned to the vehicle. UC #1 had previously reached out to TURNER, Sr. and advised him that they were at the apartment. TURNER, Sr. responded that he would soon be headed their way.

9

30. At approximately 2:28 p.m., the silver Infiniti and a silver 2019 Chevrolet Equinox, bearing Ohio license plate HNF9357, pulled into two open parking spaces in front of TARGET LOCATION #1. The driver of the Infiniti was TURNER, Sr. The driver of the Equinox was Eric Dewayne TURNER, Jr., TURNER, Sr.'s son. UC #1 observed TURNER, Jr. carrying a basketball-size package underneath his gray, form-fitting, hooded sweatshirt as he walked from the Equinox toward the apartment. UC #1 also observed that TURNER, Sr. did not appear to be carrying anything as he exited the Infiniti. Investigators believe that TURNER, Sr. was waiting for his son, TURNER, Jr., to arrive with the methamphetamine before meeting with UC #1, UC #2, and the CS.

31. At approximately 2:29 p.m., the CS walked into TARGET LOCATION #1 behind the TURNER. Sr. and TURNER, Jr. The CS remained in the apartment for approximately one minute before walking out and briefly meeting with UC #1 and UC #2.

32. At approximately 2:31 p.m., the CS, UC #1, and UC #2 walked to TARGET LOCATION #1. UC #1 and UC #2 stood in the doorway to the apartment. TURNER, Sr. handed UC #1 approximately 970.3 gross grams of a white crystalline substance, purported to be methamphetamine, that was contained within two large zip-lock bags and then further contained within a white plastic shopping bag, in exchange for $5,000.00 in OAF.

33. UC #1 recognized TURNER, Sr. from the previous controlled purchases of methamphetamine. Later, UC #1 positively identified TURNER, Jr. from a CPD

10

arrest photograph of TURNER, Jr. that was taken on September 2, 2021. According to UC #1, the only individuals inside the apartment at the time of the drug transaction, besides the CS, were TURNER, Sr. and his son, TURNER, Jr. The CS also positively identified TURNER, Jr. as the individual driving the Equinox and assisting TURNER, Sr. with this drug transaction. During a debriefing of the CS following the transaction, the CS advised Your Affiant that while inside TARGET LOCATION #1, he/she observed TURNER, Jr. pulling two bags containing what appeared to be methamphetamine from underneath his hooded sweatshirt and then placing them on the kitchen counter.

34. The purported methamphetamine that was purchased from TURNER, Sr. was transported to the DEA's Columbus District Office for processing. A presumptive field test of a sample that was taken from the methamphetamine was positive for the presence of methamphetamine.

35. On December 14, 2022, the Franklin County Municipal Court signed a tracker warrant for the silver Infiniti driven by TURNER, Sr. This warrant was a renewal of the earlier tracker warrant. This warrant was authorized for a period not to exceed 45 days.

36. On January 4, 2023, plans were formulated at the DEA's Columbus District Office to surveil a planned meeting between UC #1, UC #2, and TURNER, Sr. at TARGET LOCATION #1. The ultimate goal was for UC #1 and UC #2 to meet with TURNER, Sr. for the purpose of purchasing three (3) pounds of methamphetamine from TURNER, Sr. for

11

$7,500.00. According to the CS, TURNER, Sr. had agreed to sell UC #1 three (3) pounds of methamphetamine for $7,500.00 and then front UC #1 an additional two pounds of methamphetamine.

37. UC #1 obtained $7,500.00 in OAF with which to purchase the purported methamphetamine. UC #1 was also equipped with a digital recording device and a transmitter that investigators monitored over cellular telephones.

38. On January 4, 2023, at approximately 10:10 a.m., electronic surveillance indicated that TURNER, Sr.'s silver Infiniti departed 2125 Sumac Loop South in Columbus, Ohio 43229. At approximately 10:15 a.m., electronic surveillance indicated that TURNER, Sr.'s silver Infiniti arrived at TARGET LOCATION #1.

39. At approximately 12:35 p.m., electronic surveillance of the silver Infiniti indicated that this vehicle, normally driven by TURNER, Sr., was still parked at TARGET LOCATION #1.

40. At approximately 12:36 p.m., investigators established surveillance of TARGET LOCATION #1. At the time, the above-mentioned Infiniti was parked in front of apartment 1934.

41. At approximately 12:41 p.m., UC #1 and UC #2 arrived and parked within walking distance of TARGET LOCATION #1. UC #1 and UC #2 get out of the vehicle

12

and walked towards TARGET LOCATION #1. When they arrived, UC #1 knocked on the door to apartment 1934. TURNER, Sr. opened the door and greeted the undercover investigators.

42. TURNER, Sr. handed UC #1 approximately 3,190 gross grams of a white crystalline substance, purported to be methamphetamine, that was contained within one large vacuum-sealed bag that was contained in a white plastic Menard's shopping bag and then further contained within a large black paper Express shopping bag, in exchange for the $7,500.00 in OAF. UC #1 recognized TURNER, Sr. from the previous controlled purchases of methamphetamine. According to UC #1, the only individual inside the apartment at the time of the drug transaction that he was able to observe was a middle-aged black female who was smoking marijuana in the living room.

43. The purported methamphetamine that was purchased from TURNER, Sr. was transported to the DEA's Columbus District Office for processing. A presumptive field test of a sample taken from the purported methamphetamine was positive for the presence of methamphetamine.

44. Based on the facts in this affidavit as well as my training and experience and the training and experience of other law enforcement officers involved in this investigation, I am aware of that it is common for drug traffickers to keep controlled substances, drug proceeds, packaging materials and other drug paraphernalia, firearms and other weapons, cellular telephones and other communication devices, notes, ledgers, logs, and other documentation

concerning sources of supply, customers, and other co-conspirators and associates, within residences they use to conduct or faclitate their drug trafficking activities.

## CONCLUSION

45. I submit that this affidavit supports probable cause for a warrant to search TARGET LOCATION #1, described in Attachment A, in order to seize the items described in Attachment B.

## REQUEST FOR SEALING

46. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organization as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of

the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Christopher Cadogan
Special Agent
Drug Enforcement Administration

January 10, 2023

Subscribed and sworn to before me on _____ .

_____
Kimberly A. Jolson
United States Magistrate Judge

15

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is 1934 Grande Rue Circle, Columbus, Ohio 43229. The premises is an apartment located inside the Reserve at Sharon Woods Apartments. The apartment door is red with brown trim, faces west, and is located on the ground floor. The premises is marked by the numbers "1934." The numbers are black and located on the trim to the left of the door. The premises located at 1934 Grande Rue Circle, Columbus, Ohio 43229, will hereafter be referred to as TARGET LOCATION #1.

## **ATTACHMENT B**

## **ITEMS TO BE SEIZED**

1. All items found at the location described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846, including:

   a. Methamphetamine and other controlled substances;

   b. Packaging materials for controlled substances and other drug paraphernalia;

   c. Records, information, and items tending to show dominion and control over the premises, including, but not limited to, bills or other business-related documents, correspondence, and photographs;

   d. Records, information, and items tending to identify co-conspirators and sources of supply, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, and lists of names;

   e. Items commonly used to facilitate drug trafficking, such as firearms, ammunition, beepers, pagers, cellular telephones, pay/owe sheets, packaging materials, "cut," scales, and grinders;

   f. Likely proceeds of drug trafficking, such as U.S. currency and other negotiable instruments; and

   g. Records, information, and items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as

writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

As used above, the term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The storage media referenced above include any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.